**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Justin Noel Menendez,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-14-2436-PHX-DGC (JFM)

**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 3, 2014 (Doc. 1).  On February 24, 2015, Respondents filed their Answer (Doc. 6).  Petitioner filed a Reply on April 10, 2015 (Doc. 7).

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals described the factual background as follows:

> On November 15, 2006, detectives placed Menendez under surveillance.  Detectives observed him pick up Thomas Burns in a white PT Cruiser at 9:56 p.m., and return to his house in Phoenix. Surveillance continued into the night, and detectives observed Menendez and Burns drive to and enter/exit the backyard of a

1

nearby unoccupied residence ("residence") five times between approximately 1:00 a.m. and 5:00 a.m. on November 16, 2006. Menendez was wearing dark clothing and dark gloves, and at different times while Menendez and Burns were at the residence, detectives heard a drill-like noise, several "loud bangs," and then "smaller banging." Each time after Menendez and Burns left the residence and returned to Menendez's home, detectives inspected their points of entry and assessed progressive damage at the residence. After Menendez's fifth visit to the residence, police found a portion of the side garage door, the area near the dead bolt, had been broken off and was lying on the concrete; they also discovered "pry marks on the lower hinge of the door."

Eventually police conducted a traffic stop and arrested Menendez. Searching his vehicle, detectives "found [] a pair of black gloves [] in the driver's door," and "a flathead screwdriver that was laying on the passenger side seat, as well as a green flashlight that was in the back compartment of the vehicle."

(Exhibit G, Mem. Dec. 4/20/10 at 3-4.) (Exhibits to the Answer, Doc. 6, are referenced herein as "Exhibit ___.")

**B. PROCEEDINGS AT TRIAL**

Petitioner and his accomplice, Burns, were indicted on November 24, 2006 in Maricopa County Superior Court on charges of attempted burglary and possession of burglary tools.  (Exhibit A, Indictment.)

Counsel filed a Motion in Limine (Exhibit T) seeking to preclude: (1) testimony that the reason for the ongoing surveillance of Petitioner by the police was their belief that he was a career burglar; (2) admissions by Petitioner to being a career burglar; (3) Petitioner's possession of illegal drugs at the time of his arrest; and (4) Petitioner's subsequent arrest on December 6, 2006 on new burglary charges.  The motion was unopposed and was granted.

Petitioner eventually proceeded to a jury trial, and was found guilty of both charges.  (Exhibits B and C, Verdicts.)  On December 3, 2008, Petitioner was sentenced to 15 years on the attempted burglary, and a concurrent 5.75 years on the possession of burglary tools.  The sentences were also made concurrent with sentences in another case, and Petitioner was granted 730 days credit for time served.  (Exhibit D, Sentence.)

//

**C.  PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a direct appeal.  Counsel filed an opening brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and related state authorities, indicating an inability to find a viable issue for appeal.  Counsel alerted the appellate court to some 11 claims that Petitioner had requested counsel raise.  (Exhibit E, Opening Brief.)  Petitioner eventually filed a *pro per* Supplemental Opening Brief (Exhibit F), arguing errors in admitting testimony regarding Petitioner being under surveillance, denial of an instruction to clarify, and denial of the motions to acquit.  (Exhibit F, Supp. Brief.)

On April 20, 2010, the Arizona Court of Appeals issued a Memorandum Decision, addressing claims regarding insufficient evidence, withholding of exculpatory information, and denial of clarifying jury instruction, and declining to address a claim of ineffective assistance of counsel.  The court further reviewed the record for reversible error and found none.  (Exhibit G, Mem. Dec. 4/20/10.)

Petitioner filed a Petition for Review (Exhibit H) with the Arizona Supreme Court.  That petition was summarily denied by an Order issued November 8, 2010 (Exhibit I).

On December 28, 2010, the Arizona Court of Appeals issued its Mandate. (Exhibit G.)


**D.  PROCEEDINGS ON POST-CONVICTION RELIEF**

Thereafter, on January 26, 2011, Petitioner filed through counsel a Notice of Post-Conviction Relief (Exhibit J).  Counsel eventually filed a Notice of Completion of Review (Exhibit K) evidencing an inability to find an issue for review.   Petitioner then file a *pro per* Supplemental Petition for Post-Conviction Relief (Exhibit L) arguing claims including: (1) denial of a speedy trial; (2) violation of the trial court's order granting Petitioner's motion in limine: (3) misrepresentations by the trial judge to trial counsel of the expected sentence in the event of a conviction at trial; (4) insufficient evidence on the attempted burglary; and (5) insufficient evidence on the burglary tools

1  charge.

2      The state responded that the insufficiency of the evidence claim had been resolved

3  on direct appeal, and that the other claims were waived by failure to present them on

4  direct appeal.  (Exhibit M, PCR Resp.)

5      On January 3, 2012, the PCR court summarily denied the petition.  (Exhibit O.)

6      Petitioner then filed a Petition for Review (Exhibit P) with Division One of the

7  Arizona Court of Appeals, arguing claims of: (1) violation of the order on the motion in

8  limine; (2) denial of speedy trial; (3) misrepresentations by the trial judge to trial counsel

9  of the expected sentence in the event of a conviction at trial; and (4) insufficient

10  evidence on the attempted burglary.  The state responded (Exhibit Q), again arguing

11  preclusion of the claims.

12      On May 1, 2013, the matter was transferred to Division Two of the Arizona Court

13  of Appeals.  (Exhibit S, Order 5/1/13.)

14      On July 16, 2013, Division Two of the Arizona Court of Appeals issued its

15  Memorandum Decision (Exhibit R), granting review, but adopting the conclusion that

16  "All of Menendez's above claims either were raised or could have been raised on appeal

17  and are therefore precluded."  (Exhibit R, Mem. Dec. 7/16/13 at 2-3.)

18      Petitioner did not seek further review, and the Arizona Court of Appeals issued its

19  mandate on October 3, 2013.  (Exhibit R, Mandate.)

20

21  **E.  MOTION FOR EXTENSION OF TIME RE HABEAS**

22      On April 18, 2014, Petitioner filed in this Court a Motion for Extension of Time

23  to File Petition for Writ of Habeas Corpus, which was filed in *Menendez v. Ryan*, *et al.*,

24  CV-14-0828-PHX-DGC-JFM, Doc. 1.  That motion sought an order tolling the habeas

25  "statutory filing deadlines" in light of Petitioner's medical conditions and treatment

26  beginning September, 2013 and continuing through a surgery expected to be scheduled

27  within six weeks.  On September 8, 2014, the Court denied that motion, finding that the

28  motion failed to qualify as a habeas petition, referencing the applicable statute of

limitations, and noting the apparent application of an October 3, 2014 expiration date, and the action was dismissed without prejudice to the filing of a proper habeas petition. (CV-14-0828-PHX-DGC-JFM, Doc. 5.)

## F.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 3, 2014 (Doc. 1).  The Petition was dated as of September 23, 2014, and declares "that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on Sept. 23, 2014." (*Id.* at 13.) The envelope contains no postage or postal mark, but includes a received stamp from the Clerk of the Court dated November 3, 2014.

In ordering a response, the Court summarized Petitioner's grounds for relief as follows:

> In **Ground One**, Petitioner alleges that the due process clause and his constitutional rights were violated because he was denied his right to a fair trial when the State's witnesses violated a court order when they **[volunteered] suppressed evidence**. In **Ground Two**, Petitioner alleges that the due process clause and his constitutional rights were violated because he was denied his right to a fair trial when State's witnesses improperly testified to **unduly prejudicial character evidence**. In **Ground Three**, Petitioner alleges that the due process clause and his constitutional rights were violated because he was denied his right to a **speedy trial** when the trial judge granted the State a continuance after Petitioner had objected to the continuance and refused to waive time. In **Ground Four**, Petitioner alleges that the due process clause and his Constitutional rights were violated because he was denied his right to a fair and legal sentence when the trial judge **sentenced** Petitioner to a fifteen-year term of imprisonment after telling Petitioner's attorney that the trial judge would sentence Petitioner to a ten-year term of imprisonment if he was found guilty. In **Ground Five**, Petitioner alleges that the due process clause and his constitutional rights were violated because he was denied his right to a fair and legal conviction because the State did not meet the **necessary burden of proof** to find Petitioner guilty of the charged crimes and the trial judge denied Petitioner's motion for a directed verdict. In **Ground Six**, Petitioner alleges that the due process clause and his constitutional rights were violated because he was denied his right to a fair and legal conviction because the State did not meet the necessary **burden of proof** to find Petitioner guilty and the jury verdict was contrary to the weight of the evidence.

5

(Order 1/14/15, Doc. 3 at 1-2 (emphasis added).)

**Response** – On February 24, 2015, Respondents filed their Answer (Doc.6). Respondents argue that the Petition is untimely, Claims 3 and 4 are procedurally defaulted, and all of his claims are without merit.  If dispositive, Respondents sought an evidentiary hearing on the effective filing date of the Petition, noting the extended delay between the purported delivery to prison officials and the actual filing date.

**Reply** - On April 10, 2015, Petitioner filed a Reply (Doc. 7).  Petitioner urges his untrained, *pro se* status, and the limited legal resources available to him in the Arizona Department of Corrections. (*Id.* at 2.)  He argues he has attempted to exhaust his state remedies, but the state courts would not consider his claims.  (*Id.* at 2-3.)  He argues the merits of his claims.  (*Id.* at 3-5.)  He asserts he did not file a petition for writ of certiorari because of the state's refusal to consider his claims. (*Id.* at 5.)  He did not seek further review in his PCR proceeding because the state was unwilling to consider his claims.  (*Id.* at 5-6.)  He argues that any untimeliness resulted from instructions in the available legal guide that his judgment became final upon expiration of time for further review, and he was entitle to wait until the mandate was received.  (*Id.* at 6-7.)  He argues that he suffers from a cancerous tumor, and that he has been a chronic pain patient for five years, and has undergone chemotherapy, radiation therapy and surgery, and has been diligent despite those limitations.  (*Id* at 7.)  He again argues the limited legal resources available to him, and the lack of notice in his PCR proceedings on the filing deadline.  (*Id.* at 8.)  He further argues that he requested advice from this Court on the deadline for filing, and was awaiting a ruling on his "motion to postpone." (*Id.*)  He further argues that prison personnel "deliberately withheld the defendant[']s legal mail which is seen by the difference in the petitioner's finish date and the filing date."  (*Id.*)  Petitioner then again argues the merits of his claims.  (*Id.* at 9-19.)  Petitioner appends a listing of available legal resources under Arizona Department of Corrections Department Order 902, copies of various state of Arizona rules, the Rules Governing Section 2254 Cases, and the federal habeas statutes (28 U.S.C. § 2241 *et seq.*). (*Id.* at Exhibit A.)

**Supplements** – On August 26, 2015, the Court directed Respondents to supplement the record regarding the mailing of Petitioner's habeas petition.   On September 11, 2015, Respondents filed a Supplemental Answer (Doc. 12), reporting that the prison had no records of mailings by Petitioner between the date and filing of his Petition (Doc. 1), and thus conceding they had nothing to counter Petitioner's avowal that he mailed his petition on September 23, 2014.  Petitioner has not supplemented his Reply.

### III. APPLICATION OF LAW TO FACTS

**A.  TIMELINESS**

**1.   One Year Limitations Period**

Respondents assert that Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  Petitions filed beyond the one year limitations period are barred and must be dismissed. *Id.*

**2.  Commencement of Limitations Period**

**Conviction Final** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1]

Here, Petitioner's direct appeal remained pending through November 8, 2010, when the Arizona Supreme Court denied his Petition for Review.  (Exhibit I.)

---

[1]  Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).  Petitioner proffers no argument that any of these apply.

It is well established in the Ninth Circuit that for purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *See Bowen v. Roe*, 188 F.3d 1157, 1158 (9th Cir.1999).  The rules of the Supreme Court of the United States, requires that a petition for a writ of certiorari be filed "within 90 days after entry of the order denying discretionary review." U.S.S.Ct. R. 13(1).  Accordingly, because Petitioner did not file a petition for a writ of certiorari, his conviction became final on Monday, February 7, 2011, 90 days after the Arizona Supreme Court denied review.[2]

**Conclusion re Commencement** - Therefore, Petitioner's one year began running on February 8, 2011, and without any tolling expired on February 7, 2012.

**3.  Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  This provision only applies to state proceedings, not to federal proceedings.  *Duncan v. Walker*, 533 U.S. 167 (2001).

Petitioner's limitations period commenced running on February 8, 2011. Petitioner's PCR proceeding was commenced on January 26, 2011, before his limitations period began running, when his attorney filed his Notice of Post-Conviction Relief (Exhibit J).  It remained pending until at least July 16, 2013, when the Arizona Court of Appeals issued its Memorandum Decision (Exhibit R) denying the Petition for Review.

However, the Arizona Court of Appeals did not issue its Mandate (Exhibit R) until October 3, 2013.   The question arises whether Petitioner's PCR proceeding remained pending through that date.

---

[2] It is true that the Arizona Court of Appeals did not issue its mandate until December 28, 2010.  (Exhibit G.)  But the deadline for a certiorari petition extended beyond that deadline, and runs from the order denying review, not the mandate.

**State Rules Determinative of Finality** – The Supreme Court has held that an application for state collateral review "is pending as long as the ordinary state collateral review process is 'in continuance'-*i.e.,* 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.' "  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).

"Courts look to state law in making this determination."  Means, *Federal Habeas Manual* § 9A:70 (2015). "The question of when a state's postconviction or other collateral review proceeding concludes is informed by state law."  Means, *Postconviction Remedies* § 25:25 (2015).  But that is not to say that state law is always determinative.

Indeed, the Ninth Circuit has turned to state law to determine the finality of a state decision for both purposes of commencement of the habeas limitations period under 28 U.S.C. § 2244(d)(1), and for purposes of statutory tolling under 28 U.S.C. § 2244(d)(2).

In *Wixom v. Washington*, 264 F.3d 894 (9th Cir. 2001), the Ninth Circuit evaluated whether the finality of a Washington state conviction was delayed until issuance of  a mandate.  To resolve the issue, the Ninth Circuit looked to Washington Rules of Appellate Procedure which plainly provided that the Washington mandate was merely "written notification…of an appellate decision terminating review." *Id.* at 898 (quoting Wash. R.App. P. 12.5(a) (West 1998)).  Thus, the Ninth Circuit concluded that the mandate was irrelevant to when the conviction became final for purposes of the commencement provisions in 28 U.S.C. § 2244(d)(1).  *Id.* at 898.

Similarly, in *Bunney v. Mitchell*, 262 F.3d 973 (9th Cir. 2001), the Ninth Circuit considered whether a California Supreme Court order denying a state habeas petition left the proceeding "pending" for purposes of the tolling provisions of 28 U.S.C. § 2242(d)(2).  The Circuit relied on a California rule directing that the order was "not final for 30 days," to conclude that the tolling continued until that 30 days ends.  262 F.3d at 983.

In *White v. Klitzkie*, 281 F.3d 920 (9th Cir. 2002) the Ninth Circuit relied upon *Wixom* and *Bunney*, and concluded in a footnote that a decision of the Supreme Court of Guam marked finality of a conviction for purpose of 28 U.S.C. § 2244(d)(1) because Guam had "no similar rule extending the time when the decision of its Supreme Court becomes final." *Id.* at n. 4.

However, in *Hemmerle v. Schriro*, 495 F.3d 1069 (2007), the Circuit noted a sharp limitation on the relevance of state law in a determination of a commencement date under § 2244(d)(1).  The Ninth Circuit concluded that the date of issuance of a mandate under Arizona law is irrelevant to when a conviction becomes final for purposes of the commencement of the habeas limitations period.  *Id.* at 1073-1074.[3]   In doing so, the circuit court noted that in *Wixom*, the court had explained in footnote 4 that it was disregarding case law on the point.  "That the Washington courts have interpreted the term 'final' in § 10.73.090 to mean the date at which the mandate issues is their prerogative. We, as stated above, are constrained by Congress' definition of the term." *Hemmerle*, 495 F.3d at 1073 (quoting *Wixom*, 264 F.3d at 898, n. 4).

Still, the *Hemmerle* court was careful to clarify that it was deciding only finality for purposes of § 2244(d)(1).  "Here, we are not asked to determine whether an application for relief is 'pending' under § 2244(d)(2); instead, we must decide when direct review was final under § 2244(d)(1)(A)."  495 F.3d at 1074.  The latter, which determines the commencement of the limitations period, is based on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Because state rules on finality may "vary from State to State…[t]he qualifying words in § 2244(d)(1)(A) [*i.e.* 'final by…'] make it clear that finality is to be determined by reference to a uniform federal rule."  *Clay v. United States*, 537 U.S. 522, 523 (2003).

---

[3] In *Gonzalez v. Thaler*, 132 S.Ct. 641, 647 n.2 (2012) the Court observed a split between the circuits on the issue whether finality of a conviction runs from the decision or the mandate. That dispute appears unresolved.

Later in its decision, the *Hemmerle* court went on to address the application of the former provision, 28 U.S.C. § 2244(d)(2), governing tolling rather than commencement. The court concluded that the issuance of a "letter mailing a certified copy of the Supreme Court's Order denying review" was "not equivalent to the issuance of a mandate," and thus was irrelevant to determining when a post-conviction petition is no longer pending for purposes of tolling under 28 U.S.C. § 2244(d)(2). 495 F.3d at 1077. The court reasoned that as a matter of federal law, a state application remains pending until "final resolution through the State's post-conviction procedures" and under Arizona law the PCR review proceeding was finally resolved when "the matter is determined," and that the rules made no provision for delay until return of the record by the appellate courts or the issuance of the certified order. *Id.* at 1077 (citing Ariz. R. Crim. P. 32.9(h)).

However, as discussed hereinafter, this portion of *Hemmerle* must be understood in light of the specific procedures applicable to Arizona PCR proceedings. In *Hemmerle*, review of the PCR petition had been denied by both the Arizona Court of Appeals and the Arizona Supreme Court. *Id.* at 1072. Thus, in *Hemmerle*, there was no formal opinion and thus no mandate to be issued.

**Arizona Mandates** - A mandate is generally defined as "[a]n order from an appellate court directing a lower court to take a specified action." Black's Law Dictionary (10th ed. 2014).

To understand Arizona procedure, it is important to recognize that not every proceeding before an appellate court results in the issuance of a mandate. Rather, the nature of the appellate court rulings dictates whether a mandate issues. The applicable state statute provides:

> If no request for review by the supreme court has been filed, or upon the receipt from the clerk of the supreme court of notification that the request for review has been denied, the clerk of the division [of the Court of Appeals] shall, if the matter has been decided by formal opinion, issue the mandate of the court of appeals, if no written formal opinion has been rendered then by certified copy of the order of the court.

11

Ariz. Rev. Stat. § 12-120.24. Thus, under this statute, only if a "written formal opinion" has been issued by either the Arizona Court of Appeals or the Arizona Supreme Court, will a mandate be issued. While this provision does not explicitly reference PCR proceedings, its applicability is not limited, and as evidenced by the issuance of the Mandate in this proceeding (coupled with the lack of rules applicable to mandates in PCR proceedings), it is clear that this provision applies to PCR petitions for review.

In keeping with the distinction between orders (*e.g.* denying review) and formal opinions in § 12-120.24, Arizona's time limits for PCR petitions calculates due dates differently based on the nature of the preceding proceeding, and the type of concluding issuance. Where the prior proceeding was a direct appeal, the time runs from the "issuance of the order **and** mandate in the direct appeal." Ariz. R. Crim. P. 32.4(a) (emphasis added). This is because appellate review is generally not discretionary, thus an opinion must always issue, and a mandate will follow. *See State v. Bolding*, 227 Ariz. 82, 87, 253 P.3d 279, 284 (Ct. App. 2011) ("the Arizona constitution gives a person who has been accused of a crime 'the right to appeal in all cases'"); and Ariz. Const. art. II, § 24.

Conversely, where the preceding proceeding was a PCR proceeding (*i.e.* an of-right, first PCR proceeding of a pleading defendant), the time runs from the "issuance of the final order **or** mandate by the appellate court." *Id.* (emphasis added). This distinction recognizes that a PCR proceeding may terminate without a formal opinion, and thus without a mandate.

This distinction between PCR proceedings and appeals derives from the nature of the various appellate court proceedings.

In Arizona, there is no right of appeal from the denial of a petition for post-conviction relief. Instead, appellate court review may be obtained through a petition for review pursuant to Ariz. R. Crim. P. 32.9. The appellate court has discretion in whether to grant review. Ariz. R. Crim. P. 32.9(f). "The decision of the appellate court to grant or not grant review is not reviewable by appeal." *State v. Blazak*, 131 Ariz. 598, 602,

643 P.2d 694, 698 (1982).  Thus, a PCR petition for review may generally result in either an order denying review, or an order granting review.  *See* Ariz. R. Crim. P. 32.9(f).

If review is granted, the appellate court may order further proceedings on the petition, and subsequently issue a decision regarding relief, or may include such decision in the order granting review.  *Id.*  If review is denied, then the petitioner may seek further review by the Arizona Supreme Court, pursuant to the procedures in Ariz. R. Crim. P. 31.19 (which generally governs petitions for review by the Arizona Supreme Court in direct appeals).  *See* Ariz. R. Crim. P. 32.9(g).  The Arizona Supreme Court similarly has discretion to either grant or deny review.  Ariz. R. Crim. P. 31.19(f) and (h).

Therefore, for example, if both the Arizona Court of Appeals and the Arizona Supreme Court simply deny review, there is no formal opinion, thus no mandate, and only a certified copy of the order denying review need be issued. This is what happened in *Hemmerle*.  And, therefore, as determined in *Hemmerle*, the PCR proceeding is "finally resolved" and no longer "pending" when the Arizona Supreme Court denies review.  *Hemmerle*, 495 F.3d at 1077.  And, as determined in *Hemmerle*, the proceeding does not remain pending until the subsequent forwarding by the Arizona Court of Appeals of the certified order of the Arizona Supreme Court.

Or, if the court of appeals denies review of a PCR proceeding, and no review is sought from the Arizona Supreme Court, then there is no formal opinion, thus no mandate, and only a certified copy of the order denying review need be issued.  Then, the matter is "finally resolved" when the Arizona Court of Appeals issues its order denying review.[4]

On the other hand, if the court of appeals grants review in a PCR proceeding, it will issue a formal opinion (even if it ultimately denies relief).  In this instance, even if no further review is sought, the appellate court will issue a mandate.

---

[4] For the reasons discussed in the Report & Recommendation in *Thornton v. Ryan*, CV-14-0834-PHX-SPL-JFM, the undersigned would not extend tolling for the time in which the defendant could have, but did not, seek review by the Arizona Supreme Court.  (*See id.* at Doc. 22, Report & Recommendation at 8, *et seq.*)

Indeed, the latter situation describes Petitioner's case.  Petitioner sought review in his PCR proceeding.  The Arizona Court of Appeals granted review but denied relief, and issued its formal opinion to do so.  (*See* Exhibit R, Mem. Dec. 7/16/13.)  Petitioner did not seek further review, so the appellate court (eventually) issued its Mandate some 49 days later, on October 3, 2013.  (*See id.* at Mandate.)

It remains to be resolved, however, whether the proceeding remains "pending" for purposes of statutory tolling under § 2244(d)(2) until issuance of the mandate

**<u>Distraction over Rule 31.23</u>** - In *Celaya v. Stewart*, 691 F.Supp.2d 1046 (D. Ariz. 2010), aff'd 497 Fed. Appx. 744, 2012 WL 5505736 (9th Cir. 2012), *cert. denied*, 133 S.Ct. 1824 (2013), Judge Bury adopted a recommendation by Magistrate Judge Velasco in a case similar to Petitioner's, where the Arizona Court of Appeals granted review but denied relief, and the defendant did not seek review by the Arizona Supreme Court.  Judge Bury distinguished *Hemmerle* on this basis, applied Arizona Rule of Criminal Procedure 31.23 (finding that it governed "appeals and other post-conviction relief"), and concluded that the PCR proceeding remained pending until issuance of the mandate.  In *Washington v. Ryan*, 2015 WL 274151 (D.Ariz. 2015), Magistrate Judge Velasco (hearing the case by consent) relied upon *Hemmerle* and *Celaya* to conclude that where the Arizona Court of Appeals grants review but denies relief, and the Arizona Supreme Court denies review, the mandate determines finality.  Judge Velasco again relied upon Rule 31.23 and also on Ariz. Rev. Stat. § 12-120.24.

Respondents argue that *Celaya* is mistaken because Arizona Rule of Criminal Procedure 31.23 does not apply to PCR proceedings.  Respondents argue that Rule 31 (including Rule 31.23) only governs direct appeals, and that Rule 32 governs post-conviction relief proceedings.  They argue that the only exceptions are where Rule 32 explicitly incorporates portions of Rule 31, *e.g.* Rules 32.9(c)(1) and 32.9(g).  (Answer, Doc. 6 at 11-12, n. 7.)

Indeed, Arizona law draws a sharp, if not wholly impermeable, line between direct appeals and post-conviction relief proceedings.  Arizona Rule of Criminal

Procedure 31.1 provides: "Rule 31 governs the procedure for appeals from the Superior Court of Arizona to the Arizona Supreme Court or Court of Appeals which are jointly referred to herein as 'the Appellate Court.'"   In contrast, Rule 32 governs post-conviction relief proceedings and review therefrom. In *State v. Gause*, 112 Ariz. 296, 541 P.2d 396 (1975) (*en banc*), the Arizona Supreme Court considered the propriety of an attempted appeal from the denial of a motion for rehearing on a PCR petition.  The court opined:

> Post-conviction relief pursuant to Rule 32 of the Rules of Criminal Procedure 1973 is a remedy separate and apart from the right to appeal. In pursuing post-conviction remedies, petitioner is limited to procedures set forth in the rule…Upon denial of the motion for rehearing the petitioner may timely seek review in the appropriate appellate court as provided by Rule 32.9(c).

*Id.* 112 Ariz. at 297, 541 P.2d at 397.

Further, it is true that Rule 32 makes no explicit provision for mandates.  Rule 32.9 governs review in PCR proceedings, and generally provides for a petition for review to the Arizona Court of Appeals, Ariz. R. Crim. P. 32.9(c), and further review by the Arizona Court of Appeals, such review to be governed by Ariz. R. Crim. P. 31.19. *See* Ariz. R. Crim. P. 32.9(g).  In turn, Rule 31.19 permits a denial or grant of review, and various forms of relief if review is granted.  *See* Ariz. R. Crim. P. 31.19(f), (h) and (i).  Where, as here, the court denies review, the rule directs:

> If the Supreme Court denies review, its order shall specify those justices of the Supreme Court, if any, who voted to grant review. When all petitions and cross-petitions for review have been denied, the clerk of the Supreme Court shall so notify the clerk of the Court of Appeals and the parties, and return the briefs to the clerk of the Court of Appeals.

Ariz. R. Crim. P. 31.19(h).  No provision is made in this rule for the issuance of a mandate by either the Arizona Supreme Court or the Arizona Court of Appeals. Nor is there a provision in the rules for delay in the effective date of the order denying review.

Similarly, Rule 32.9, relied upon in *Hemmerle*, makes no provision for issuance of a mandate or delay in the effectiveness of the courts' orders.  At most, the rule simply provides for the disposition of the record (e.g. capital case records retained by the

appellate court, except exhibits, and all other cases returned to the trial court).  *See* Ariz. R. Crim. P. 32.9(h).

Indeed, the only provision for issuance of a mandate in the Arizona Rules of Criminal Procedure is that in Rule 31.23.  Because that rule is not incorporated into the provisions of Rule 32, it has no application to petitions for review in PCR proceedings.

However, the Arizona Rules of Criminal Procedure are not the only authority governing Arizona procedure.  Rather, as discussed hereinabove, Ariz. Rev. Stat. § 12-120.24 directs the issuance of a mandate "if the matter has been decided by formal opinion."

**Effect of Mandate on Pendency of Proceeding** - That, of course, does not resolve the issue relevant to this case: whether Petitioner's PCR proceeding remained "pending" until issuance of the appellate court's Mandate on October 3, 2013. Resolving that issue requires revisiting the distinction pointed out in *Hemmerle* between determining whether a conviction is "final" under § 2244(d)(1) and whether a post-conviction proceeding is "pending" under § 2244(d)(2).

In resolving the latter, the federal habeas court is not applying a uniform federal rule on what makes a state proceeding final, .*e.g.* "conclusion of direct review," 28 U.S.C. § 2244(d)(1)(A).  Rather the habeas court is tasked to determine whether "the ordinary state collateral review process is 'in continuance'-*i.e.,* 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.' "  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).

The Arizona courts have held that "in Arizona, 'an appellate decision becomes final when the mandate issues.'"  *State v. Dalglish*, 183 Ariz. 188, 189, 901 P.2d 1218, 1219 (App. 1995) (determining finality of judgment for purposes of retroactive application of retroactive application of new rules).  *See also  Ramon v. Ryan*, CV 09-560-TUC-CKJ, 2010 WL 3564819, at *6 (D. Ariz. 2010) (detailing other holdings requiring mandate for finality of judgment).

Thus, in Arizona cases where a formal opinion (a decision) has issued and a mandate follows, the issuance of the mandate signals the final resolution of the proceeding for purposes of tolling under 28 U.S.C. § 2244(d)(2) (even if it is irrelevant for purposes of commencement of the limitations period under § 2244(d)(1)).

That adherence to state law in resolving the "pending" question was the impetus of District Judge Bury's decision in *Celaya*, and Magistrate Judge Velasco's decision in *Washington*.   Thus, even if the undersigned disagrees with how they got there, the undersigned agrees that an Arizona post-conviction relief proceeding remains pending until issuance of the mandate, at least in those PCR cases in which a mandate is called for under Ariz. Rev. Stat. § 12-120.24.  *But see* Keith J. Hilzendeger, *Arizona State Post-Conviction Relief*, 7 Ariz. Summit L. Rev. 585, 677 (2014) (citing *Hemmerle* and *State v. Dalglish*, 901 P.2d 1218, 1220-21 (Ariz. Ct. App. 1995)) ("The period of tolling continues until the highest appellate court in which review is sought denies a petition for review in the Rule 32 proceedings. Just as with direct review, the issuance of the mandate in Rule 32 proceedings is not the event that ends the period of tolling.").

Thus, Petitioner's habeas limitations period was tolled from its commencement through October 3, 2013.  It commenced running again on October 4, 2013, and expired one year later on October 3, 2014.

**4.  Timeliness of Petition**

Petitioner's Petition (Doc. 1) was filed by the Clerk on November 3, 2014. However, the Petition includes the following:  "I declare under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on Sept. 23, 2014."  (Doc. 1 at 13, physical page 22.)

"In determining when a pro se state or federal petition is filed, the 'mailbox' rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing."  *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

Respondents have conceded they have nothing to refute Petitioner's declaration,

the prison's mail log failing to show the mailing of his habeas petition.  While the extended delay of 41 days is inconsistent with the undersigned's general experience with the operations of the Arizona Department of Corrections and the U.S Postal Service, there is nothing in the record to refute Petitioner's declaration.  For example, there is no postmark on the envelope (Doc. 1-5), and no mail or other log showing a different delivery or mailing date. Neither of those agencies (though admirably efficient) is foolproof in their handling of mail.

Respondents originally sought an evidentiary hearing on this issue, but now concede they have no evidence to present.

Accordingly, the undersigned finds that the Petition was delivered to prison officials for mailing on September 23, 2014.

As determined in subsection (2) above, with the available tolling, Petitioner's one year habeas limitations period expired October 3, 2014, making his September 23, 2014 Petition timely.

## B.  EXHAUSTION AND PROCEDURAL DEFAULT

Respondents argue that Petitioner's state remedies on his claims in Grounds 3 (Speedy Trial) and 4 (Misrepresentation re Sentence) were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.[5] (Answer, Doc. 6 at 16, *et seq.*)

Petitioner argues he raised his claims on direct appeal in his Supplemental Brief and his Petition for Review to the Arizona Supreme Court.  (Reply, Doc. 7 at 2-3.)

## 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if

---

[5] In this portion of their Answer, Respondents ignore Petitioner's insufficient evidence claim in Ground 6, and only reference his insufficient evidence claim in Ground 5. (Answer, Doc. 6 at 18.)  When addressing the merits, Respondents appear to address the two grounds jointly.  (*Id.* at 34, *et seq.*)

available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*).  The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

"A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'"  *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Proper Vehicle** - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petition must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim.  A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983).  And, while new factual

19

allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies. *Duncan v. Henry*, 513 U.S. 364, 366 (1995).  While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).  "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

**Fair Presentation** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing."

20

*Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).  *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

## 3.  Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

**4. Application to Petitioner's Claims**

**a.  Ground Three – Speedy Trial** - In Ground Three of his Petition, Petitioner argues that his trial was delayed for well over one year, and that in February, 2008 the trial court granted, over his objection, continuances.

Respondents argue that Petitioner did not fairly present this claim on direct appeal because it was addressed in a single sentence in the conclusion of his Supplemental Brief, it was subsequently fairly presented for the first time in his PCR petition for review, but was held barred under by Arizona's waiver bar.  (Answer, Doc. 6 at 18-19.)

Petitioner replies that Ground 3 was fairly presented in his Supplemental Brief on direct appeal.  (Reply, Doc. 7 at 3.)  Appellate counsel filed an *Anders* brief (Exhibit E), and Petitioner filed a Supplemental Brief (Exhibit F).  The latter purported to present only three questions for review: (1) errors in admission of testimony; (2) instructional error regarding closing statements; and (3) error in denying the motion for directed verdict.  (Exhibit F at i-iii.)  Indeed, Petitioner raised the speediness of his trial only in his Conclusion (*id.* at 15, *et seq.*) when he argued:

> Constitutional Law and Article 2, sections 4 and 24 of the Arizona Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution guarantees the rights of appellant with due process of law in the preceding matters.  Based on the foregoing authorities, laws, rules and statutes that provide the inadmissibility of unduly prejudicial evidence to a jury, permits the exclusion of evidence that is prejudicial, confusing or misleading to the jury, and that all charges must be proven beyond a reasonable doubt thus guaranteeing the right to a fair and speedy trial by an impartial jury. [Appellant was charged on 11-16-06 and trial began 4-15-08 was there lack of due process to a fair and speedy trial Oshrin v. Coulter, 142 Ariz. 109, 688 P.2d 1001 (1984) and was there lack of due diligence, State ex. rel. [Romley] v. Superior Court ex. rel. County of Maricopa, 162 Ariz. 302, 783 P.2d 241 (1989)].

(Exhibit F, Supp. Brief at 15.)  Respondents cast this discussion of speedy trial as a "single, conclusory sentence, tucked away in the 'Conclusion' of the brief." (Answer, Doc. 6 at 19.)

Indeed, Petitioner made no reference to the factual foundation of the claim he now asserts.  At most, Petitioner noted the time elapsed between the date charged and the date

1 trial began.  He makes no reference to the amount of excludable time, any reasons for

2 various delays, he does not mention the final continuance or his objections, and he

3 argued no prejudice from any delay.  Each of those facts are relevant and necessary to

4 support a speedy trial or due process-delay claim.

> In *Barker v. Wingo*, [407 U.S. 514 (1972)], the Supreme Court
> articulated a four-part test to determine when government delay has
> abridged the Sixth Amendment right to a speedy trial. The factors to
> be considered include: (1) the length of the delay; (2) the reasons for
> the delay; (3) the accused's assertion of the right to speedy trial; and
> (4) the prejudice caused by the delay. No single factor is necessary
> or sufficient.

9 *McNeely v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003).

> Pre-indictment delay may result in a denial of due process.
> To block a prosecution on this basis, a defendant must initially show
> actual prejudice resulting from the delay. The proof must be
> definite, not speculative.
> Prejudice is a necessary but not sufficient element of a due
> process claim. Once it is shown, the court must consider the reasons
> for and the length of the delay.

14 *United States v. Mills*, 641 F.2d 785, 788 (9th Cir. 1981) (citations omitted).

15 Thus, even assuming fair presentation could result from the assertion of a new

16 claim for the first time in the conclusion of a brief which contained explicit enumerations

17 of the claims raised, Petitioner failed to fairly present the facts which form the basis of

18 his current claim.  As presented to the state court, Petitioner's claim was of a simple "the

19 delay between arrest and trial was too long" variety.  As presented here, Petitioner points

20 to a specific delay, and argues his contemporaneous objections.  By doing so, Petitioner

21 attempts to "fundamentally alter the legal claim already considered by the state courts."

22 *Vasquez*, 474 U.S. at 260.

23 In his Petition for Review to the Arizona Supreme Court, Petitioner specifically

24 enumerated his speedy trial and due process arguments as issues not addressed by the

25 Arizona Court of Appeals.  In that portion of his brief, he enumerated the additional facts

26 upon which he now relies, including the expiration of the permitted days, the grant of the

27 final continuance, and his objection.  (Exhibit H, Pet. Rev. at 3-4.)  Again, however, he

28 did not assert these claims as ones for which he sought review.  (*Id.* at 6, *et seq.*)  Nor did

he reference those issues in his conclusion.  (*Id.* at 11.)

Based upon the foregoing, the undersigned concludes that Petitioner failed to fairly present to the state courts in his direct appeal his claim in Ground 3.

In his Petition, he asserts it was raised Ground 3 his PCR Petition for Review, pages 2C-2E. (Petition, Doc. 1 at 8.)  In his PCR Petition, Petitioner argued that the grant of the state's motion to continue over his objection resulted in a denial of Petitioner's speedy trial rights.  (Exhibit L, Supp. Pet. at 3D-3E.)  The PCR court summarily denied the petition.  (Exhibit O, M.E. 1/3/12.)

Petitioner then repeated the claim in his Petition for Review (Exhibit P, Pet. Rev. at Attach. A, at 2C-2D.)  The Arizona Court of Appeals disposed of the claim by finding: "[a]ll of Menendez's above claims were raised or could have been raised on appeal and are therefore precluded."  (Exhibit R, Mem. Dec. 7/16/13 at 2-3.)  In doing so, the Arizona Court of Appeals relied on Arizona Rule of Criminal Procedure "Rule 32.2(a)(2) and (3)" for the proposition that "all claims that were '[f]inally adjudicated on the merits on appeal' or '[t]hat [have] been waived at trial [or] on appeal' are precluded from relief."  (*Id.* at 2.)

Respondents contend this amounted to the application of a waiver bar under Rule 32.2(a). (Answer, Doc. 6 at 19.)   However, in the plain language of its decision, the Arizona Court of Appeals relied upon two vastly different procedural bars when it referenced Rule 32.2(a)(2) and 32.2(a)(3).   The former applies to claims "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding."  Ariz. R. Crim. P. 32.2(a)(2).  The latter applies to claims that have "been waived at trial, on appeal, or in any collateral proceeding."  Ariz. R. Crim. P. 32.2(a)(3).  A finding of preclusion, i.e. that the claims have been raised before, "does not provide a basis for federal courts to apply a procedural bar." *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996).

To avoid habeas review, a state court decision must "clearly and expressly rely on an independent and adequate state ground." *Coleman v. Thompson*, 501 U.S. 722, 735

(1991). Where an Arizona Court asserts both conditions apply to a group of claims without delineating which applied to which, it "did not clearly base its decision on independent and adequate state law grounds." *Id. See also Calderon v. U.S. Dist. Court for Eastern Dist. of California (Bean)*, 96 F.3d 1126, 1131 (9th Cir. (Cal.) 1996); *Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. (Nev.) 2002) ("By failing to specify which claims were barred for which reasons, the Nevada Supreme Court 'did not clearly and expressly rely on an independent and adequate state ground.'"); and *Koerner v. Grigas*, 328 F.3d 1039, 1053 (9th Cir. (Nev.) 2003).

Moreover, this Court may not look beyond the pronouncement of the state court, to the procedural history, and conclude that the true decision was one that the claims had not been raised, were thereby waived, and thus procedurally barred on that ground. In *Cone v. Bell*, 556 U.S. 449 (2009), the Court was faced with a state appellate decision which disposed of a federal claim on the mistaken basis that it had been previously presented. The record reflected that the claim had clearly not been presented or passed on in any prior proceeding. Nonetheless, the Supreme Court held: "When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review…When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted." 556 U.S. at 466-67. The Court further rejected the state's request to treat the rejection as a procedural bar based upon the state's waiver rule. "Although we have an independent duty to scrutinize the application of state rules that bar our review of federal claims, we have no concomitant duty to apply state procedural bars where state courts have themselves declined to do so. The Tennessee courts did not hold that Cone waived his *Brady* claim, and we will not second-guess their judgment." 556 U.S. at 468-69.

In his dissent to the Ninth Circuit's decision in *Koerner*, Judge Beezer argued that the reference to an "ambiguous" order "should be understood in light of the state court opinion and the record in that case, rather than looking solely to the face of the state

court's opinion." 328 F.3d 1039, 1056 (Beezer, J. dissenting).  However, Judge Beezer's

dissent plainly acknowledged the import of the majority decision in *Koerner*:

> Today's opinion holds that a federal court may only look to the state
> court opinion at issue in determining whether a state court opinion
> relies on a procedural default. If a state court opinion is ambiguous
> on its face, today's opinion makes it impossible to find a procedural
> default because any such state court opinion does not "clearly and
> expressly rely on an independent and adequate state ground."
> *Valerio v. Crawford*, 306 F.3d 742, 773 (9th Cir.2002) (citation
> omitted).

*Koerner*, 328 F.3d at 1056 (Beezer, J. dissenting).  *But see McElyea v. Schriro*, 2009 WL

222375, CV-06-0884-PHX-SMM(HCE) (D. Ariz. 2009) (looking beyond state court

opinion, based on pre-*Koerner* 9th Circuit cases doing so, citing *Koerner*, but without

noting Beezer's dissent).

    The opinion of the Arizona Court of Appeals is ambiguous on its face, proposing

two mutually exclusive reasons for disposing of the claims. According to *Koerner*, this

Court is not free to look beyond that ambiguity and attempt to ascertain the true basis for

disposing of the claim.

    Accordingly, the PCR court's ambiguous rejection of the claim in Ground 3 must

be treated as one on the basis that the claim has previously been presented and decided,

and thus must conclude that Petitioner has exhausted his state remedies on this claim.


### b.  Ground 4 – Sentencing Advice

    In his Ground 4, Petitioner asserts that he was denied Due Process because the

trial judge promised to impose the presumptive sentence of 10 years at trial, and instead

imposed an aggravated sentence of 15 years, and but for the misrepresentation, Petitioner

would have proceeded to trial.  (Petition, Doc. 1 at 9, *et seq.*)  Respondents argue this

claim was first presented in Petitioner's PCR petition and petition for review, and was

precluded by the Arizona Court of Appeals as waived.   (Answer, Doc. 6 at 19.)

Petitioner does not explicitly address the exhaustion of this claim in his Reply.   In his

Petition, he asserts it was raised in his PCR Petition and his Petition for Review, pages

2E and 2F. (Petition, Doc. 1 at 9.)

Indeed, Petitioner did raise the facts of this claim in his PCR Petition for Review, and argued that it was a denial of Due Process under the "5th, 6th, 8th, 14th Amendments of United States Constitution."[6]  (Exhibit P, Pet. Rev. at 2E, 2F.)

Thus, Petitioner fairly presented the due process claim he now asserts to the Arizona Court of Appeals.  As with Ground 3, when that court ruled the claim precluded, it relied upon two mutually exclusive provisions, one which would result in the claim being properly exhausted, and the other in it being waived under the state rule.  As with Ground 3, that ambiguous order requires this habeas court to consider Petitioner's state remedies on the claim adequately exhausted.

**c.  Summary Re Exhaustion** – Based upon the foregoing,  the undersigned concludes that Petitioner adequately exhausted his state remedies as to both Grounds 3 and 4.

## C.  MERITS OF GROUND 1 – PRIOR BAD ACTS

### 1.  Background

**Arguments** - In Ground 1, Petitioner argues that the due process clause and his constitutional rights were violated because he was denied his right to a fair trial when the State's witnesses violated a court order on Petitioner's motion in limine when they testified to Petitioner's prior bad acts. (Petition, Doc. 1 at 6, *et seq*.)  Respondents argue: (1) to the extent the claim is founded upon a state law violation it does not state a cognizable habeas claim; (2) it is not a recognized claim under U.S. Supreme Court law; and (3) the claim is factually unsupported.  (Answer, Doc. 6 at 23-24.)  In his Reply,

---

[6] In support of this contention, Petitioner cited *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and *Blakely v. Washington*, 123 S. Ct. 2531 (2004).  (*Id.* at 2F.)  Those cases relate to a defendant's right to a jury determination on factors which increase the permissible sentencing range.  Petitioner fails to explain how they relate to a purported misrepresentation by the trial judge on the intended sentence.

Petitioner argues that it was the simple testimony that he was under surveillance which was prohibited under the first paragraphs of the motion in limine, and prejudice is shown by the juror questions on the issue (juror questions numbers one, two, three, and seven). (Reply, Doc. 7 at 9-11.)

**Factual Background** – At trial, Petitioner filed a Motion in Limine (Exhibit T) seeking to preclude various matters regarding Petitioner's "other and prior bad acts." (*Id.* at 1.)  In particular, the motion argued in pertinent part:[7]

> At the time that Defendant Menendez was arrested on November 16th, 2006, and again on December 6th, 2006, for residential burglary or attempted residential burglary, police officers were following him around and conducting surveillance of his activities. They were doing so because they suspected him of being a "career burglar". It is the position of the defendant that the officers' suspicions and reasons for conducting surveillance of his actions are unproven theories and that they would be more prejudicial than probative of the truth under the circumstances.

(*Id.* at 1-2.)   The State did not object to the motion, and it was granted without elaboration by the court.   (Exhibit U, M.E. 4/14/08 at 1.)   However, the parties did discuss with the trial court the import of the motion.

> THE COURT: Mr. Susee, you had filed a motion in limine, and, Mr. Green, my understanding is the state has no objection to that?
> MR. GREEN: That's correct. And, just to make sure I understand it correctly, the defense wants to make sure that we do not go into the incident on December 6th, which I guess forms the basis of another charge. I'll instruct the witnesses to not talk about any other burglary that occurred on December 6th.
> Also, apparently the defendant made the statement or admission that he was a career burglar. I'll instruct the witnesses not to talk about that.
> In addition, I believe all the detectives or at least some of them are part of the Phoenix Police Department's Repeat Offender Bureau. So, I'll make sure  that they simply state that they work for the Phoenix Police Department and then the  larger division as opposed  to the specific Repeat Offender Bureau. That way there's no prejudice there, as well.
> THE COURT: Is that agreeable, Mr. Susee?
> MR. SUSEE: I'm just looking at the -- oh, also  there was an

---

[7] The motion also sought to exclude: (1) admissions by Petitioner that he was a "career burglar;" (2) Petitioner's possession of illegal drugs at the time of his arrest; and (3) the fact that Petitioner was arrested a second time on December 6, 2006.  (Exhibit T, Motion at 2.)

issue of a claim that in one or both these cases, I believe it's the other case, but that Mr. Menendez was found in possession of illegal drugs at the time of his arrest. I'd ask that that not be referred to or brought up.

MR. GREEN: The state agrees. I'll instruct the witnesses not to talk about any admission he may have had with respect to use of drugs or any other incidents where he was caught with drugs.

THE COURT: It's order granting the motion in limine.

(Exhibit EE, R.T. 4/14/08 at 2-3.)

At trial, Detective Frederickson testified that he worked in the surveillance unit. (Exhibit FF, R.T. 4/15/08 at 28-30.) He testified:

Q  Going back to November of 2006, were you involved in an investigation of a person by the name of Justin Menendez?
A  Yes, I was.
Q  And did that investigation involve doing surveillance?
A  Yes.
* * *
Q  And you mentioned that this was part of a surveillance. On those specific days were you actually doing surveillance of the defendant?
A  Yes, I was.

(Id. at 31, 33.)    Frederickson made no reference to the specific purpose of the surveillance or any reference to suspecting Petitioner to be a career burglar.

After cross-examination, a number of juror questions were posed. Jury Question #1 inquired in part: "What made the detective need to watch the accused in the first place? Was the detective tipped off about Justin Menendez?" (Petition, Doc. 1, Exhibits at "54".) Jury Question #2 inquired in part "Why was the defendant surveyed so early in the afternoon in daylight?" (Id. at "55".) Jury Question #3 asked: "Why was the surveillance being done." (Id. at "56".) Jury Question #7 asked: "What began the suspicion that led to the surveillance? Was the defendant previously under surveillance." (Id. at "60".) Defense counsel objected to these questions, and they were not asked of the witness. (Exhibit FF, R.T. 4/15/08 at 104, et seq.)

Detective Higgins similarly testified to being a surveillance detective and being involved in surveillance of Petitioner. (Id. at 114-115.) He made no reference to the specific purpose of the surveillance or suspicions of Petitioner being a career burglar.

Detective Feree testified similarly testified to being a surveillance detective and

1    being involved in surveillance of Petitioner.  (Exhibit GG, R.T. 4/16/08 at 8-9.)  He

2    made no reference to the specific purpose of the surveillance or suspicions of Petitioner

3    being a career burglar.

4        Detective Hamas similarly testified to being a detective in a burglary division and

5    being involved in surveillance of Petitioner.  (Exhibit GG, R.T. 4/16/08 at 14-17.)  He

6    made no reference to the specific purpose of the surveillance or suspicions of Petitioner

7    being a career burglar, or to the Repeat Offender Bureau.

8

9    **2.  Standards on Habeas Review**

10       While the purpose of a federal habeas proceeding is to search for violations of

11    federal law, in the context of a prisoner "in custody pursuant to the judgment a State

12    court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief.

13       **Errors of Law** - "[A] federal habeas court may not issue the writ simply because

14    that court concludes in its independent judgment that the state-court decision applied [the

15    law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To

16    justify habeas relief, a state court's decision must be "contrary to, or an unreasonable

17    application of, clearly established Federal law, as determined by the Supreme Court of

18    the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

19       **Errors of Fact** -  Federal courts are further authorized to grant habeas relief in

20    cases where the state-court decision "was based on an unreasonable determination of the

21    facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §

22    2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's

23    fact-finding process unless, after review of the state-court record, it determines that the

24    state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366

25    F.3d 992, 999 (9th Cir. 2004).

26       Moreover, a state prisoner is not free to attempt to retry his case in the federal

27    courts by presenting new evidence.  There is a well-established presumption of

28    correctness of state court findings of fact.  This presumption has been codified at 28

U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**No Decision on the Merits** – The limitations of 28 U.S.C. § 2254(d) only apply where a claim has been "adjudicated on the merits in State court."  Thus, where a petitioner has raised a federal claim to the state courts, but they have not addressed it on its merits, then the federal habeas court must address the claim *de novo*, and the restrictive standards of review in § 2254(d) do not apply. *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013). *See id.* (adopting a rebuttable presumption that a federal claim rejected by a state court without being expressly addressed was adjudicated on the merits).

### 3.  State Law Claim Not Cognizable

To the extent that Petitioner simply complains that the trial court's order on the motion in limine was not complied with, or that the state evidentiary rules regarding prejudicial evidence were violated, the claim is not cognizable on habeas review.

A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States. Federal habeas relief is not available for alleged errors in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991).  It has long been understood that a state may violate its own law without violating the United States Constitution. *Gryger v. Burke*, 334 U.S. 728, 731 (1948).

> We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

31

*Id.*, 334 U.S. at 731.

> But it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). And we have repeatedly held that " 'federal habeas corpus relief does not lie for errors of state law.' " "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."

*Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010) (citations omitted) (holding that an unreasonable determination of facts by state court did not justify relief in the absence of a finding of federal law violation).

### 4.  Due Process Violation from Other Bad Acts Evidence

Respondents assert that the Supreme Court has not yet recognized the admission of other bad acts evidence as giving rise to a due process claim.  (Answer, Doc. 6 at 23-24.)  Respondents concede, however, that although fairly presented with this claim, the state courts failed to address it on the merits.  (*Id.* at 23.)  Accordingly, this habeas court is not limited under 28 U.S.C. § 2254(d) to Supreme Court law to evaluate this claim.

Under the law of the Ninth Circuit, "a federal court cannot disturb on due process grounds a state court's decision to admit prior bad acts evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).  Here, Petitioner fails to show that any prior bad act evidence was introduced.  The undersigned has searched the record and found none.  Having found nothing to support the contention that prior bad act evidence was introduced, the arbitrariness or purported prejudice need not be addressed.

Petitioner conflates evidence of his prior bad acts with evidence of the actions of the police in conducting surveillance. Contrary to Petitioner's contentions, the Motion in Limine did not seek to exclude evidence of the surveillance, but simply the motivation for the surveillance, *i.e.* that "they suspected him of being a 'career burglar.'" (Exhibit

T, Mot. in Limine at 1.)   It was the "officers' suspicions and reasons for conducting surveillance" which Petitioner asked to have excluded. (*Id.* at 1-2.)   No testimony was introduced about the police's suspicions of Petitioner.

That left the jury with the natural question of the basis for the police's purpose in conducting the surveillance.   Thus, their questions.   And, it created the possibility that the jury could infer that Petitioner was under suspicion, and thus conclude that he must be guilty.

> This may be a problem, but not a constitutional one. Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions. Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must "be of such quality as necessarily prevents a fair trial."

*Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).   Here, the jury was not required to infer that the police suspected Petitioner of being a career burglar.   The jury could have just as well inferred that the police suspected Petitioner of some unrelated crime or were randomly surveilling in the neighborhood.

Further, explaining that suspicion is relevant to explaining police actions.   "If a jury would not otherwise understand why an investigation targeted a particular defendant, the testimony could dispel an accusation that the officers were officious intermeddlers staking out [the defendant] for nefarious purposes."   *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004).

Moreover, Petitioner proffers nothing to show that evidence creating an unadorned inference of police suspicion is of the type that "necessarily prevents a fair trial."   *Jammal*, 926 F.2d at 920.   Indeed, virtually every case which involves a police investigation prior to arrest would involve evidence of police suspicion.

Accordingly, Petitioner fails to show a denial of due process with regard to evidence of the surveillance, whether because of purported evidence on the suspicions prompting the surveillance, or simply from the surveillance itself.

Therefore, Ground 1 must be denied.

33

**D.  MERITS OF GROUND 2 – CHARACTER EVIDENCE**

In Ground 2, Petitioner alleges that he was denied due process when the State's witnesses improperly testified to unduly prejudicial character evidence in the nature of testimony that Petitioner was under investigation. (Petition, Doc. 1 at 7.)  As with Ground 1, Respondents concede this claim was fairly presented but not addressed by the state courts, but again argue that no evidence beyond the existence of the investigation of Petitioner was introduced, other than testimony that one of the surveilling officers was a burglary investigator.  (Answer, Doc. 6 at 24-27.)  In his Reply, Petitioner argues that the officers should have testified that they were conducting an investigation of some sort that would not have been incriminating of Petitioner.

As with Ground 1, Petitioner fails to show any character evidence beyond the existence of the investigation. The additional fact that officer Hamas testified to working in the burglary division (Exhibit GG, R.T. 4/16/08 at 14-17) does not amount to evidence that Petitioner had the character of a burglar, or had committed other burglaries.

As with the surveillance testimony, the investigation evidence had permissible inferences, and was not of the type that "necessarily prevents a fair trial." *Jammal*, 926 F.2d at 920.

This claim is without merit.

**E.  MERITS OF GROUND 3 – SPEEDY TRIAL**

**1.  Background**

**Arguments** - In Ground 3, Petitioner argues he was denied his right to a speedy trial when the trial judge granted the State a continuance after Petitioner had objected to the continuance and refused to waive time. (Petition, Doc. 1 at 8.)    Respondents argue that under the balancing test in *Barker v. Wingo*, 407 U.S. 514 (1972), no speedy trial violation occurred.  They argue the 16 month delay was not so long as to weigh heavily in Petitioner's favor, most of the delay was attributable to Petitioner and the 50 days attributable to the prosecution were short and founded upon the prosecution's trial

schedule, Petitioner's only demands for speedy trial were at the eleventh hour, and Petitioner had failed to demonstrate prejudice.  (Answer, Doc. 6 at 27-31.)

Petitioner replies that he objected and did not waive time, and thus the grant of the continuance was a denial of due process.

**Factual Background** – Petitioner was initially charged on November 16, 2006, when he was arrested.  An indictment was issued on November 24, 2006.

On July 16, 2007, the parties appeared for a trial management conference in this case and another.  Counsel addressed their trial schedules and affirmed the scheduled trial date of August 7, 2007.  (Exhibit V, R.T. 7/16/07.)

The parties do not address the continuance from August 7, 2007, and the basis for it is not provided in the record.

Respondents allege the following then occurred:

> Petitioner's counsel asked for a continuance on September 17, 2007 (Exh. W at 2), and agreed to continuances on October 25, 2007 (Exh. X at 4); November 13, 2007 (Exh. Z at 1–3), and November 20, 2007 (Exh. AA at 3–4.) All of this time appears to have passed while Petitioner sought to negotiate a more favorable plea agreement. (*See, e.g.*, Exh. X at 4; Exh. Y at 3–29; Exh. AA, at 3–4.) Indeed, on November 20, 2007, the trial judge specifically stated: "The Court notes that this has been continued multiple times for [Petitioner's] benefit to get a favorable plea offer." (Exh. AA at 4.)

(Answer, Doc. 6 at 29.)

"The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."  28 U.S.C. § 2248.   Petitioner proffers nothing to counter these allegations, and the undersigned finds nothing in the record to controvert them.

Indeed, the continuance until October 29, 2007 was granted on September 17, 2007, and was requested by Petitioner on the basis of counsel's trial schedule in another matter.  Both sides represented they were otherwise ready to proceed to trial.  (Exhibit W, R.T. 9/17/07.)

That trial date was vacated on October 26, 2007.  The prosecution requested the continuance because of a trial conflict, and the need to do a "*Donald*" settlement conference to review the pending plea offer with Petitioner.  Petitioner initially opposed the continuance on the basis that he was unwilling to accept the offered plea agreement, but ultimately agreed to a short continuance" if a settlement conference could be scheduled the following week, a status conference in two weeks, and trial set afterward at the first available date.  (Exhibit X, R.T. 10/26/07.)

The parties appeared for a settlement conference the following week, on November 8, 2007, but were unable to reach a resolution.  (Exhibit Y, R.T. 11/8/07 at 27.)  On November 13, 2007, they appeared again for a status conference, noted that the settlement negotiations were ongoing, and Petitioner agreed to waive his speedy trial rights to permit a one week continuance, until November 20, 2007, in the status conference.  (Exhibit Z, R.T. 11/13/07.)

The parties appeared again on November 20, 2007.  Petitioner reported the plea negotiations were concluded unsuccessfully, and requested a trial date.  The matter was set for trial on February 19, 2008, with a status conference on February 11.  The trial court made a finding of "extraordinary circumstances," noted "that this has been continued multiple times for the defendant's benefit to get a favorable plea offer," and ordered the delay excluded from speedy trial calculations.  (Exhibit AA, R.T. 11/20/07.)

On February 11, 2008, the parties appeared for a status conference.  The prosecution had filed a motion to continue based upon a trial conflict.  Petitioner's counsel did not dispute the assertion by the prosecution that previous delays were due to the defense, but asked for a firm trial date. Petitioner refused to waive his speedy trial rights with respect to the delay.  The court then set the matter for trial on March 3, 2008, with a status conference on February 25, 2008. No finding or order was made as to excluding the time for purposes of the state speedy trial rule. (Exhibit BB, R.T. 2/11/08.)

On February 25, 2008, the parties appeared, and the prosecution again had filed a motion to continue based on trial conflicts.  Petitioner again refused to waive his speedy

trial rights with respect to the delay, urged an early trial date, and that it be a firm date. The prosecutor proposed that if she were unavailable, she would "find somebody else to do this trial."   The matter was reset for trial on April 14, 2008.  (Exhibit CC, R.T. 2/25/08.)

The case proceeded to trial on April 14, 2008.  (Exhibit EE, R.T. 4/14/08.)

**State Court Ruling** - Despite the ambiguous pronouncement of the Arizona Court of Appeals regarding the procedural bar of this claim, the claim was not addressed on the merits by the state courts.

**2.  Delay under Due Process Clause**

Petitioner asserts that the delay was a violation of due process.

Prior to indictment or the bringing of charges, it is the Due Process Clause which governs delay, and only after "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge'" does the Sixth Amendment apply. *Arnold v. McCarthy*, 566 F.2d 1377, 1382 (9th Cir. 1978) (quoting *U.S. v. Marion*, 404 U.S. 307, 320 (1971)).  But here, Petitioner does not allege pre-indictment delay.

Similarly, the Due Process Clause can be violated by delays in post-trial appeal proceedings.  *See U.S. v. Antoine*, 906 F.2d 1379 (9th Cir. 1990).  But Petitioner does not assert such a delay.

Rather, Petitioner alleges facts that would come within the contours of the speedy trial clause of the Sixth Amendment.

**3.  Speedy Trial Requirement**

In reviewing a Sixth Amendment speedy trial clause violation, the Court must consider four factors: (1) the length of the pretrial delay; (2) the reason for the delay; (3) whether the defendant asserted his speedy trial right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).   "None of these factors are either a

necessary or sufficient condition to a finding of a deprivation of the right to a speedy trial." *United States v. Williams*, 782 F.2d 1462, 1465 (9th Cir.1985).

State statutes governing the timing of criminal pretrial and trial procedures do not define the contours of a petitioner's Sixth Amendment right to a speedy trial. *Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir. 1991), cert. denied, 112 S.Ct. 3038 (1992). Accordingly, the various calculations of the trial court about whether time was excludable or not, is not determinative. On the other hand, the findings underlying those determinations may be informative in applying the *Barker* factors.

### a. Length of the Delay

The primary inquiry is whether the trial was, in fact, not speedy. "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. U.S.*, 505 U.S. 647, 651-652 (1992).

"Depending on the nature of the charges, the lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett*, 505 U.S. at 652, n. 1. The Ninth Circuit has recognized that a sixth-month delay is a "borderline case," although there is a general consensus among the other courts of appeals that eight months constitutes the threshold minimum. *U.S. v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003).

The determination of presumptive prejudice is, however, only the first half of the inquiry on the length of delay. "[T]he court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because ... the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett,* 505 U.S. at 652. While sufficient to create a

presumption of prejudice, a 9 month delay is not so extraordinary as to weigh heavily in Petitioner's favor.   *Compare Doggett*, 505 U.S. at 652 (8½ year delay) *with U.S. v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) (22 month delay "not excessively long"); *U.S. v. Tanh Huu Lam,* 251 F.3d 852, 856 (9th Cir. 2001) (15-month delay was long enough to trigger *Barker* inquiry, but only "militate[d] slightly in Lam's favor"); *U.S. v. Beamon,* 992 F.2d 1009, 1014 (9th Cir. 1993) (17-month and 20-month delays were not "great").

The *Barker* Court noted the imprecision applied to the length of delay factor.

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

407 U.S. at 530-531.   In *U.S. v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 565 (1983), the court observed that "short delays--of perhaps a month or so--need less justification than longer delays."

Respondents calculate the delay based upon the date of indictment.   (Answer, Doc. 6 at 28.)   "[T]he period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim."   *United States v. MacDonald*, 456 U.S. 1, 7 (1982).

Here, Petitioner was arrested and charged from November 6, 2006, through April 14, 2008, a total of some seventeen months and 8 days. That is long enough to trigger a presumption of prejudice.   But in light of the circumstances, it is not so long as to weigh heavily in Petitioner's favor.   The period from arrest to the first trial date, in August, 2007, was less than 9 months.   From then until February 11, 2008, Petitioner had either requested or acquiesced in the delay.   Of the entire time, only the period from February 11, 2008 to April 14, 2008 (3 months and 3 days) was over Petitioner's objection.

/ /

/ /

### b.  Reason for the Delay

The second *Barker* factor is the reason for the delay.   "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at  531. *See e.g. Strunk v. U.S.*, 412 U.S. 434, 436 (1973) (considering but weighing "less heavily" "[u]nintentional delays caused by overcrowded court dockets or understaffed prosecutors"). "On the other hand, delay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial argument." *McNeely v. Blanas,*336 F.3d 822, 827 (9th Cir. 2003).

Here, the bulk of the delay (the first 8 months 22 days) and was routine, particularly in light of the fact that subsequent to his arrest in this case, Petitioner was released and committed additional burglaries, resulting in a new case being filed. (Exhibit T, Mot. in Limine at 1-2; Exhibit X, R.T. 10/25/07 at 3.)   The next six months of delay was with Petitioner's consent and was related to attempts to negotiate a plea agreement.  It was only the final 3 months and 3 days which were attributable to the prosecution.  This was plainly the result of the prosecutor's trial schedule.  That this period lasted so long without an offer of substitute prosecutor, and in light of the then advanced age of the case, makes this factor lean somewhat in Petitioner's favor.

### c.  Assertion of Speedy Trial Rights

The third *Barker* factor is whether the Petitioner timely asserted his speedy trial rights.  A Petitioner's own motions to continue may derogate from his assertion of his speedy trial rights.  *See U.S. v. Loud Hawk,* 474 U.S. 302, 314 (1986) (assertions of speedy trial rights "must be viewed in the light of [the defendant's] other conduct" including delays thereby occasioned); *U.S. v. Corona-Verbera*, 509 F.3d 1105, 1116 (9th Cir. 2007) (holding that the defendant's demand for a speedy trial "weigh[ed] neither in favor of dismissal nor in favor of the government" where the defendant "asserted his

right to a speedy trial only after he had asked for eight continuances, including one request after objecting to a continuance requested by the government"); *U.S. v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (holding that defendant's speedy trial demand did "not strongly counsel in favor of finding a Sixth Amendment violation" because, "[a]lthough [the defendant] at times asserted his right to a speedy trial, at other times he acquiesced in and sought continuances and exclusions of time").

Here, Petitioner never asserted his speedy trial rights until February 11, 2008, after almost 15 months had expired, and sought or acquiesced in extensions repeatedly prior to that time.  This factor weighs only somewhat in Petitioner's favor.

### d.  Prejudice to the Defendant

The final *Barker* factor is the actual prejudice suffered by the Petitioner.  Actual prejudice is typically demonstrated in three ways: "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired." *Doggett*, 505 U.S. at 654 (internal quotation marks and citations omitted). The speedy trial guarantee does not seek to prevent the defense's fortuitous loss of the ability to win by ambush, but to limit his ability for a "fair" trial.  "[I[nability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." *Barker*, 407 U.S. at 532.

Here, Petitioner proffers nothing to show any actual prejudice.  His pretrial incarceration was not oppressive.  If anything, it was created by Petitioner's own new crimes after having been released in this proceeding.

Petitioner does not suggest any anxiety or concern from the delay.  Given his other pending offenses and prosecutions, the delay in this proceeding does not suggest the kinds of stresses one would anticipate from a defendant who, but for the delayed prosecution, would be free of restrictions and the anticipation of prison.

41

Finally, Petitioner points to nothing about his defense which was hampered by the delay.  For example, he points to no witnesses or testimony rendered unavailable.

This factor leans strongly in favor of the prosecution.

### e.  Balancing

In sum, of the four *Barker* factors, three lean in Petitioner's favor, but none of them strongly so.  The final factor, actual prejudice, leans strongly in favor of the prosecution, and leads the undersigned to conclude that Petitioner was not denied a speedy trial.

Accordingly, Ground 3 is without merit and must be denied.


## F.  MERITS OF GROUND 4 – MISREPRESENTATION OF SENTENCE

In Ground 4, Petitioner argues he was denied due process when the trial judge sentenced him to a fifteen-year term of imprisonment after telling Petitioner's attorney that the trial judge would sentence Petitioner to a ten-year term of imprisonment if he was found guilty. Petitioner argues that had he known an aggravated term of 15 years would be applied, he would have accepted the plea agreement.   (Petition, Doc. 1at 9.)

Respondents argue that there is no constitutional right to a knowing and voluntary rejection of a plea offer, and that the record fails to support Petitioner's accusations, and they contradict his own assertions.  (Answer, Doc. 6 at 31-34.)

Petitioner replies that his claim has legal merit and can be supported by a sworn statement from defense counsel.  (Reply, Doc. 7 at 14.)

The record reflects that Petitioner and his counsel were fully aware that 15 year sentences were a possibility.  In the settlement conference on November 8, 2007, defense counsel reported to the settlement judge "he's looking at seven and a half to 15 plus a probation tail."  (Exhibit Y, R.T. 11/8/07 at 8.)

At most, Petitioner opines that defense counsel *might* offer a sworn statement that such a promise was made.  However, Petitioner has had some seven years to gather such

a sworn statement, and has not done so.  An evidentiary hearing is not required on allegations that are "conclusory and wholly devoid of specifics." *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir.1970).  Petitioner provides no particulars of when the purported agreement for ten years was made, nor does he explain why it is not reflected in the record.

This claim is without merit and must be denied.

## G.  MERITS OF GROUNDS 5 and 6 – INSUFFICIENT EVIDENCE

### 1.  Background

**Arguments** - In Ground 5, Petitioner alleges that there was insufficient evidence to support the convictions and his due process rights were violated because the trial judge denied Petitioner's motion for a directed verdict. (Petition, Doc. 1 at 10, *et seq.*)  In Ground 6, Petitioner alleges that there was insufficient evidence and his due process rights were violated because the jury verdict was contrary to the weight of the evidence. (*Id.* at 11, *et seq.*)

Respondents argue that there was sufficient evidence to support the convictions, and that the decision of the Arizona Court of Appeals the evidence was sufficient is entitled to deference under the AEDPA.  Respondents argue that the state court relied on the correct standard, and applied that standard reasonably.  (Answer, Doc. 6 at 34-36.)

Petitioner replies that despite the resources and manpower available to and use by the police, the evidence against him was slim.  He points to the limited evidence regarding the damage to the door, and the mismatch with the burglary tools in Petitioner's possession.  He complains the prosecution's case relied solely on the word of the officers, without corroborating evidence.  He asserts that the trial judge was required to grant the motion for a directed verdict.  (Reply, Doc. 7 at 14-16.)  He further argues that the jury's decision was based upon bias from the fact of Petitioner being under investigation and surveillance.  (*Id.* at 16-17.)

**State Court Decision** – The Arizona Court of Appeals addressed this claim on

direct appeal, and concluded that substantial evidence of Petitioner's guilt had been presented at trial.   The court opined:

> A judgment of acquittal is only appropriate when there is "no substantial evidence to warrant a conviction." Substantial evidence is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt." "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction."

(Exhibit G, Mem. Dec. 4/20/10 at 5 (citations omitted).)   The court reasoned:

> Detectives testified they saw Menendez drive to the r:esidence and enter/exit the backyard five times, heard noises coming from the unoccupied property, and described the progressive damage they observed each time Menendez and Burns left the property. The victim testified she never gave Menendez or Burns permission to be on her property and detectives found black gloves, a screwdriver, and a flashlight in the white PT Cruiser Menendez and Burns used to drive to and from the property. This circumstantial evidence was sufficient to convict Menendez of attempted burglary in the second degree and possession of burglary tools.

(*Id.* at 6.)


## 2.  State Law Claims

To the extent that Petitioner simply contends that the trial judge violated state law when he denied the motion for directed verdict, or that the jurors rendered decision against the weight of the evidence, his claims arise under state law, and are not cognizable in this federal habeas proceeding.  A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States.  Federal habeas relief is not available for alleged errors in the interpretation or application of state law.  *Estelle v. McGuire*, 502 U.S. 62 (1991).


## 3.  Sufficiency of the Evidence

The Due Process Clause of the Fourteenth Amendment protects a defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364

(1970).  "The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense." *Carella v. California*, 491 U.S. 263, 265 (1989) (citation omitted).

Accordingly, in the face of a sufficiency of the evidence claim, the habeas court must determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt.  *Wright v. West*, 505 U.S. 277, 290 (1992); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).   Under *Jackson*, on habeas, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  In making this evaluation, the court must view the evidence in the light most favorable to the prosecution, and must presume the trier of fact resolved conflicting evidence in favor of the prosecution.  *Wright*, 505 U.S. at 295-296; *Jackson*, 443 U.S. at 319, 326; *Taylor v. Stainer*, 31 F.3d 907, 908-09 (9th Cir. 1994). Even where evidence is "almost entirely circumstantial and relatively weak," it may be sufficient to support a conviction. *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir.2000). Indeed, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citations omitted).

The application of these principles has been modified by the adoption of the AEDPA.  Under the standard set forth in 28 U.S.C. § 2254(d), to overturn a state court conviction for insufficient evidence, the habeas court must not only determine for itself that no rational trier of fact could have convicted the petitioner, but also that an opposite conclusion by the state court was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(e)(1) and (2). *See Martinez v. Johnson*, 255 F.3d 229 (5th Cir. 2001) (habeas court resolves limited question whether

the state court's decision to reject a sufficiency of the evidence claim was an objectively unreasonable application of the clearly established federal law").  Thus, the post-AEDPA habeas court now must not only be deferential to the fact-finder, but also deferential to the state court's analysis of the fact-finder's work.  *See Gomez v. Acevedo*, 106 F.3d 192, 198-99 (7th Cir. 1997) (*vacated on other grounds, Gomez v. Detella*, 522 U.S. 801 (1997)).

**Propriety of State Court's Legal Standard** – Petitioner points to no error in the state court's enunciation of the governing rule.  Although framed in terms of Arizona state law, the Arizona court plainly relied upon a standard requiring evidence sufficient for reasonable jurors to find the defendant guilty beyond a reasonable doubt.  That is the standard required under *Jackson*.

**Propriety of State Court's Fact Finding** – Petitioner points to no error in the state court's fact finding.   Having reviewed the evidence admitted at trial, the undersigned finds the recitation of the facts by the Arizona Court of Appeals (*see supra* Section II(A)) to be a reasonable determination of the facts.

**Propriety of State Court's Application of Law to Facts** – Petitioner points to no particular error in the state court's application of the law to the facts.

At most, Petitioner contends that additional evidence of his guilt might have been expected, and that the jury's reliance upon their bias (rather than the facts) was evident.

With regard to the former, Petitioner argues that forensic examination of the damage to the door of the house would have revealed that it was done by a crowbar or similar instrument, and not by the screwdriver in Petitioner's possession.  He argues that additional corroborating and physical evidence of a crime should have been gathered and introduced.

Petitioner misunderstands the nature of an insufficient evidence claim.  It does not amount to a retrial of the case with additional evidence, nor even a critique of the completeness of the prosecution's case.  Rather, the court must look to the evidence actually introduced at trial, view that evidence in a light most favorable to sustaining the

verdict, and ascertain whether a reasonable juror could have found guilt beyond a reasonable doubt based on that view of the evidence. *Jackson*, 443 U.S. at 319.

Instead, Petitioner asks this Court to look beyond the evidence in the record, and opine that it might have bene sufficient to raise a reasonable doubt.   While that might be an appropriate inquiry for a claim of actual innocence, Petitioner's Grounds 5 and 6 are founded upon claims of insufficient evidence.

In contrasting the insufficiency of the evidence standard under *Jackson* from a claim of actual innocence, the Supreme Court has observed:

> The type of federal habeas review sought by petitioner here is different in critical respects than that authorized by *Jackson*. First, the *Jackson* inquiry is aimed at determining whether there has been an independent constitutional violation-i.e., a conviction based on evidence that fails to meet the *Winship* standard. Thus, federal habeas courts act in their historic capacity-to assure that the habeas petitioner is not being held in violation of his or her federal constitutional rights. Second, the sufficiency of the evidence review authorized by *Jackson* is limited to "record evidence." 443 U.S., at 318, 99 S.Ct., at 2788. *Jackson* does not extend to nonrecord evidence, including newly discovered evidence. Finally, the Jackson inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.

*Herrera v. Collins*, 506 U.S. 390, 402 (1993).   Thus, regardless what a forensic examination would have revealed or a qualified investigator would have determined, or what additional evidence might have been available, Petitioner fails to show that such evidence was before the jury, and thus it is irrelevant to determining the sufficiency of the evidence.

Finally, in evaluating the sufficiency of the evidence, the court is not engaged to ascertain whether the jury was biased as a result of the evidence that Petitioner was under investigation and surveillance.   Indeed, the reviewing court must evaluate the sufficiency of the evidence by considering even erroneously admitted evidence. *McDaniel v. Brown*, 558 U.S. 120, 131 (2010).   Even if an improper construction of the evidence of investigation and surveillance was permissible, the reviewing court must presume the jury drew inferences that supported the conviction.   *Wright*, 505 U.S. at

47

295-296.

Even if this Court could somehow find an insufficiency of the evidence based upon bias, Petitioner has failed to show the jury was biased.  At best, Petitioner shows that the jury recognized that it had not been given the whole story.  Petitioner proffers nothing beyond this to show that the jury not only drew the inference that Petitioner was suspected of being involved in burglaries, but to show that they therefore concluded he must be presumed to have committed the burglaries with which he was charged.

The trial court instructed the jury to "determine the facts only from the evidence produced in court…the testimony of the witnesses and the exhibits"; "start with the presumption that the defendant is innocent"; "consider the testimony of a police officer just as you would the testimony of any other witness."  (Exhibit GG R.T. 4/16/08 at 40-43.)  "[It is] the almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). "[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Francis v. Franklin*, 471 U.S. 307, 324, n. 9 (1985).

These instructions were delivered after the jury's questions about the basis for the surveillance.  Petitioner proffers no reason to believe the jury ignored these instructions, and concluded to convict petitioner based upon an inference that the officers suspected that Petitioner had committed other burglaries.

Accordingly, Grounds Five and Six are without merit and must be denied.

## H.  SUMMARY

Based upon the foregoing, the undersigned concludes that the Petition is timely and Petitioner's state remedies were adequately exhausted, but his claims are without merit.  Accordingly, the Petition must be denied.

/ /

/ /

48

# IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed November 3, 2014 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: October 20, 2015

14-2436r RR 15 08 17 on HC.docx

James F. Metcalf
United States Magistrate Judge